<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LOIS CORREA**<br><br>*Plaintiff,*<br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>*Defendant.* | **Civil Action No. 20-00367**<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

    **THIS MATTER** comes before the Court on Plaintiff Lois Correa's ("Plaintiff") request for review of Administrative Law Judge Donna A. Krappa's ("Judge Krappa" or the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits and Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I.     STANDARD OF REVIEW AND APPLICABLE LAW**

    **A.  Standard of Review**

    This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>McCrea v.</u>

Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence "need not rise to the level of a preponderance").

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental

activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See id.

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the claimant's residual functional capacity ("RFC") to perform work activities despite the limitations from the claimant's impairments. 20 C.F.R. §§ 416.920(e); 416.945. In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 416.920(e). Then, at step four, the Commissioner must decide if the claimant has the RFC to perform her past relevant work. 20 C.F.R. §416.920(f). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that

[the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. General Background

Plaintiff applied for SSI and DIB in 2012, when she was 55 years old. Administrative Transcript ("Tr.") 211-12, ECF No. 7. Plaintiff alleged disability due to a seizure disorder, anxiety, arthritis, leg problems, and back problems. Tr. 85. Plaintiff completed up to eleventh grade in school, and has work experience as a machine cutter, bakery worker, deli slicer, and fast-food cook. Tr. 19-20, 84.

In a Function Report dated June 16, 2015, Plaintiff stated that she lived alone and is able to take care of her personal needs independently. Tr. 15. She also reported that she prepares meals and leaves the house daily to go to her son's house and take walks. Tr. 15-16. She stated that she performs household chores (including laundry), uses public transportation, shops in stores, plays cards, and manages her own money. Id. Plaintiff also reported that she follows spoken instructions "okay" and has no problems getting along with family, friends, or neighbors. Tr. 16.

On April 3, 2019, Plaintiff attended a DDDS comprehensive consultative examination with Dr. Ruth Robles, M.D., who prepared a second Function Report, and noted that Plaintiff alleged seizure disorder and hypertension. Ex. 22F, Tr. 901-16. There, Plaintiff reported that she can no longer do laundry or light cleaning, but could clothe herself and make simple meals by herself. Tr. 902. Plaintiff also stated that she can climb up and down a few steps and walk a block. Id.

4

## B. Procedural History

Plaintiff filed applications for DIB and SSI on July 19, 2012, originally alleging that she became disabled on May 2, 2010.  Her claims were initially denied on February 28, 2013, and again upon reconsideration on August 7, 2013.  Tr. 84, 118.  After requesting a hearing, Plaintiff appeared and testified before the ALJ on December 4, 2014 in Newark, New Jersey.  Tr. 9-83.  On June 26, 2015, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review on August 18, 2016.  Tr. 557-562.  On September 13, 2016, Plaintiff amended the alleged onset date to July 13, 2013.  Tr. 647-60.

Plaintiff thereafter appealed the decision to this Court.  Tr. 563.  After oral argument on September 13, 2017, Judge Michael Vasquez, U.S.D.J. ("Judge Vasquez"), reversed the ALJ's decision and remanded to the Commissioner for further administrative action.  Tr. 563-65.  Judge Vasquez found that the ALJ's June 26, 2015 decision was not supported by substantial evidence, preventing the performance of adequate judicial review.  Id.  Judge Vasquez ordered that the ALJ, on remand, must consider all of Plaintiff's impairments (whether severe or not) and discuss the claimant's related medical issues and "the extent to which, if at all, the related medical issues impact Plaintiff's ability to do physical and mental work activities on a sustained basis despite the limitations from her impairments."  Id.  In addition, the Judge Vasquez required the ALJ to analyze the extent to which Plaintiff's noncompliance with seizure medication was due to allergic reaction or other side effects resulting from the medication.  Id.

On June 1, 2018, the Appeals Council remanded the matter to Judge Krappa for reassessment consistent with Judge Vasquez's Order.  Tr. 567-70.  Plaintiff appeared and testified at the hearing before Judge Krappa on October 24, 2018, in Newark, New Jersey.  On September 12, 2019, Judge Krappa concluded that Plaintiff became disabled on April 3, 2019, and will be

5

able to claim SSI from that date forward. Tr. 445-67. The ALJ determined that Plaintiff was not disabled during any other time period asserted; because Plaintiff's disability insurance lapsed on March 31, 2018, she did not qualify for DIB. Id. This Action followed.

### C. ALJ Decision

Using the five-step framework, the ALJ determined that Plaintiff was not disabled prior to April 3 2019. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 13, 2013. Tr. 451. At step two, the ALJ determined that Plaintiff's seizure disorder (with recurring headaches, blurry vision, disorientation, confusion, shaking, nausea, and vomiting), affective disorders, and anxiety with panic attacks qualified as severe impairments. Tr. 452. At step three, the ALJ found that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairment. Tr. 452.

Before moving on to step four, the ALJ determined that prior to becoming disabled on April 3, 2019, Plaintiff

> had the [RFC] to perform work at all exertional levels as defined under the Regulations. [T]he claimant was able to was able to perform jobs: that required no use of ladders, ropes, or scaffolds; that required no exposure to unprotected heights, hazards or dangerous machinery; and that involved no exposure to undue amounts of dust or known chemical irritants. The claimant was able to perform unlimited balancing, stooping, kneeling, crouching, and/or crawling. She was unable to perform any jobs where driving a vehicle is a condition of employment. Furthermore, as to the mental demands of work. . . the claimant was only able to perform jobs: that were simple and repetitive; and that required only an occasional change in the work setting during the workday.

Tr. 453. In reaching this determination, the ALJ evaluated the totality of the evidence in the record, including objective medical and psychiatric reports, medical opinion evidence, and Plaintiff's testimony. Tr. 453-54. In compliance with the District Court's remand order, the ALJ considered the "other medical issues" (headaches, blurry vision, disorientation, confusion, shaking, nausea,

6

and vomiting) and whether Plaintiff's documented noncompliance with medication was a result of allergic reaction or other medication-related side effects.  Tr. 455.

The ALJ concluded that Plaintiff's "other medical issues" are occasional symptoms of her seizure disorder, which never caused Plaintiff acute distress during emergency room visits, resolved prior to discharge in stable condition, and went untreated by specific medication.  Id.  The ALJ noted that the medication noncompliance considered in the initial RFC is not a significant factor because Plaintiff is currently maintained on another seizure drug with no evidence of allergy or other apparent side effects.  Id.  The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her testimony concerning the intensity, persistence, and limiting effects of these symptoms prior to April 3, 2019, are not fully supported by the record medical evidence.  Tr. 454.

Beginning on April 3, 2019, the ALJ determined that Plaintiff had the RFC

> to perform work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to: lift/carry 50 lbs. occasionally and 25 lbs. frequently; stand for 3 hours; walk for 2 hours; sit for 3 hours in an eight hour workday; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the postural and environmental demands of work, the claimant has been able to perform jobs: that require no use of ladders, ropes, or scaffolds; that do not require driving a vehicle as a condition of employment; and that do not [require] exposure to unprotected heights, hazards or dangerous machinery. Furthermore, as to the mental demands of work, the claimant has been able to perform jobs: that are simple and repetitive; and that require only an occasional change in the work setting during the workday.

Tr. 457.[1]  In reaching this determination, the ALJ again noted that she evaluated the totality of the evidence in the record, including objective medical and psychiatric reports, medical opinion evidence, and Plaintiff's testimony.  Tr. 457-58.  Here, however, the ALJ found Plaintiff's

---

[1] Plaintiff does not challenge this RFC finding, only the ALJ's RFC finding with respect to the dates ranging from July 11, 2013 to April 2, 2019.  See Pl. Br. 9-17.

7

testimony concerning the intensity, persistence, and limiting effects of these symptoms to be consistent with the objective medical evidence and other evidence.  Tr. 458.

At step four, the ALJ found Plaintiff unable to perform past relevant work.  Id.  At step five, the ALJ concluded that, prior to April 3, 2019, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  Tr. 459.  The ALJ reached this conclusion with the assistance of a vocational expert ("VE") who evaluated Plaintiff's age, education, work experience, and RFC.  Id.  Given Plaintiff's classification as an individual closely approaching advanced age with limited education who can speak English, along with the non-exertional limitations, the VE determined that the jobs available to Plaintiff included tray worker and bagger.  Id.  The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act from July 13, 2013 through April 2, 2019.  Tr. 460.  Therefore, because Plaintiff was only insured through March 31, 2018, the ALJ denied Plaintiff's application for DIB.

However, the ALJ concluded that Plaintiff became disabled on April 3, 2019.  Tr. 460.  From that date, the ALJ found there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform due to her functional limitation to light work.  Id.  The ALJ thus approved Plaintiff's application for SSI beginning on April 3, 2019.  Id.

### III. ANALYSIS

Plaintiff urges the Court to reverse the Commissioner's final administrative decision and order the payment of benefits or, in the alternative, vacate and remand the ALJ's decision for further administrative proceedings.  First, she argues that Judge Krappa erroneously issued an identical decisional RFC without the evidence required by Judge Vasquez's Order.  Pl. Br. at 9, ECF No. 15.  Second, Plaintiff maintains that the ALJ's RFC determination was not based on substantial evidence.  Id. at 17.  The Court disagrees and addresses each argument in turn.

### A. The ALJ's Adherence to the District Court's Remand Order

Plaintiff first argues that the ALJ's RFC determination for the period of July 11, 2013 to April 12, 2019 constituted harmful legal error because it did not properly adhere to the District Court's Remand Order.

On remand, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 CFR § 404.977(b); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 205 (3d. Cir. 2008). An agency's failure to adhere to a court's remand order in a subsequent administrative proceeding constitutes legal error. Sullivan v. Hudson, 490 U.S. 877, 886 (1989) ("Deviation from the Court's Remand Order in the subsequent administrative proceedings is legal error, subject to reversal on further judicial review.").

The District Court's September 13, 2017 Remand Order highlighted two points for consideration in a subsequent ALJ hearing: (1) the extent to which Plaintiff's related medical issues (headaches, blurry vision, disorientation, confusion, shaking, nausea, and vomiting) impact her ability to do physical and mental work activities on a sustained basis despite the limitations from her impairments, and (2) the extent to which Plaintiff's documented noncompliance with medication was due to an allergic reaction to, or other side effects from, the medication. Tr. 509-12, 564-65. The Appeals Council's June 1, 2018 Remand Order further directs the ALJ to conduct further proceedings "consistent with the order of the court." Tr. 569.

Judge Krappa's 2019 RFC determination finding no disability for the period between the amended onset date of July 13, 2013 and April 2, 2019, was identical to the initial 2015 RFC determination rejected by the District Court for lack of substantial supporting evidence. Tr. 17, 453. Plaintiff argues that the issuance of an identical RFC constitutes "a brazen rejection" of this

9

Court's Order and the Appeals Council's Remand Order, as the Court already found that same RFC language lacking the support of substantial evidence. Pl. Br. at 13-15.

The Court notes that the issuance of an identical RFC on remand is not inconsistent with the Appeals Council remand order nor the controlling order of this Court. Judge Vasquez, in his oral opinion, stated that: "The ALJ may be a hundred percent right, or the ALJ may be incorrect. I just don't have enough information in the opinion to do a proper finding." Tr. at 510. Judge Vasquez contemplated that the ALJ's RFC may be entirely correct in substance, but that it could not stand in its original form without consideration of the "other medical issues" and the rationale for Plaintiff's medication noncompliance.

On remand, the ALJ explicitly addressed Plaintiff's "related medical issues" and medication noncompliance, as ordered by the District Court:

> I have specifically considered the "other medical issues" that the claimant claims occur in or around the time of her seizures—namely, headaches, blurry vision, disorientation, confusion, shaking, nausea, and vomiting—as noted by the District Court. I note that these symptoms do not always occur in every instance where the claimant experiences a seizure. The records show that sometimes a headache and nausea precede a seizure, and on other occasions, there are no such complaints. The symptoms are seizure connected. Notably, the claimant has not been prescribed any medications to specifically treat headaches (such as Imitrex) or to treat nausea and vomiting—which makes clear that these "other medical issues" (as described by the District Court) occur in conjunction with the seizure activity. Moreover, in each instance where the claimant appeared at the emergency room following a seizure, any related symptoms resolved prior to discharge as the claimant was always discharged in stable condition. I note that despite alleging disabling seizure related issues, like headaches, she was routinely described by medical providers as in no apparent/no acute distress ([e].g., Exhibit 15F at 8).
>
> I noted in the prior decision that the claimant was sometimes not compliant with her anti-seizure medication as evidenced by sub-therapeutic levels detected in her blood during testing. She claims this was due to an allergy to the seizure drug Vimpat. However, there are many seizure medications available on the market. Indeed,

>> the claimant is currently maintained on Keppra and Depakote, with no evidence of any allergy or any other apparent side effects (Exhibit 18F at 18).

Tr. At 455.

The Court is satisfied the ALJ sufficiently addressed the areas of concern raised by Judge Vasquez. Judge Krappa provided additional and explicit articulation to support her findings and address the gaps in the rationale supporting the first RFC determination. See Davis v. Comm'r Soc. Sec., 849 F. App'x 354, 358, n.3 (3d Cir. 2021) (noting the ALJ's compliance with the district court's remand order where the ALJ issued a new decision after conducting a hearing on remand and addressed each of the five steps of the sequential analysis); Rini v. Comm'r of Soc. Sec., No. 2:16-CV-04973, 2017 WL 2656017, at *1 (D.N.J. June 19, 2017) (affirming the ALJ's conclusion upon remand after the District Court's order directed the ALJ to further develop the evidence and determine the impact of claimant's impairments on her RFC, where ALJ's remanded opinion "explicitly relie[d] on treatment records, tests, and credible expert testimony as they pertain to each of Plaintiff's alleged ailments"). Indeed, the ALJ specifically considered "other medical issues" (headaches, blurry vision, disorientation, confusion, shaking, nausea, and vomiting) on remand, as requested by this Court, and found that they were seizure connected, not treated by specific medication, and typically resolved prior to discharge. Tr. 435-37.

Further, our review does not hinge on whether the ALJ arrived at an RFC determination different than the initial decision, rather, as discussed below, this Court must evaluate whether the ALJ based her RFC determination on substantial evidence. See Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd sub nom. Holley v. Comm'r of Soc. Sec., 590 F. App'x 167 (3d Cir. 2014) ("If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, 'even if [it] would have decided the factual inquiry differently'" (quoting Fargnoli

v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001))). The second RFC also satisfied 20 CFR § 404.977(b) by adhering to the broad language of the Appeals Council's Remand Order.

### B. The ALJ's RFC Determination

Plaintiff next argues that the RFC is not supported by substantial evidence, as the ALJ failed to provide a rational connection between the undisputed evidence and the conclusion that Plaintiff suffers no exertional (physical) limitations whatsoever. Pl. Br. at 17. Again, the Court disagrees.

An RFC should account for the most activity that a claimant can perform despite her limitations. 20 C.F.R. § 416.945(a). An ALJ's RFC determination must "be accompanied by a clear and satisfactory explication of the basis on which it rests" to enable judicial review. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ is ultimately responsible for making an RFC determination based on the medical evidence, and must "include a narrative discussion describing how the evidence supports each conclusion," Harris v. Comm'r of Soc. Sec., No. 09-3219, 2010 WL 2874352, at *6 (D.N.J. July 19, 2010), but must only include those limitations the record supports, Ramirez v. Barnhart, 372 F.3d 546, 552 (3d. Cir. 2004). An ALJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020). Moreover, Plaintiff has the burden to demonstrate how any alleged error "could have affected the outcome of [her] disability claim." See Holloman v. Com'r of Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016).

Here, the ALJ supported her RFC determination with a detailed discussion of the medical and nonmedical evidence, ultimately concluding that Plaintiff was able to perform work at all exertional levels, with certain restrictions. Tr. 453. The ALJ considered Plaintiff's subjective testimony of her symptoms, but concluded that her accounts of the intensity, persistence, and

limiting effects of her conditions were "somewhat inconsistent" with the evidence in the record. Tr. 454.  For example, with respect to Plaintiff's seizures, and the related medical impairments, the ALJ noted that emergency room records showed Plaintiff's "vague complaints of pre seizure sensations," but on several occasions, doctors did not observe seizure activity in the emergency room or while hospitalized, and neurological examinations were generally unremarkable.  Tr. 437, 761-86.  Additionally, a computed tomography scan dated March 24, 2017, revealed moderate cerebral atrophy, but the findings of a mildly abnormal EEG were nonspecific and there were no epileptiform discharges during the recording.  Tr. 891-900.

Plaintiff also contends that there is no rational connection between the medical evidence and the ALJ's RFC determination that Plaintiff can "perform work at all exertional levels as defined under the Regulations."  Pl. Br. at 22 (citing Tr. 453).  Specifically, Plaintiff challenges the ALJ's determination that her full exertional capacity included an "ability to lift and carry over 100 pounds all day," as it was based only on evidence that she "can walk and suffers no obvious atrophy in her limbs."  Id. at 22-23.  Plaintiff further rejects the ALJ's conclusion that there is no physical impairment resulting from her cerebral atrophy and seizure disorder, instead arguing that "basic common sense and elemental knowledge of medicine" precludes the ALJ's finding.  Id. at 25.

The Court finds these arguments unavailing, and is satisfied that the ALJ considered Plaintiff's testimony regarding her impairments and daily activities, treatment records, and medical opinions, and determined the validity and probative value of the record evidence independently and in combination.  The ALJ found that while Plaintiff's subjective testimony and submitted function report showed complaints of panic attacks and depression, Tr. 454; 513-39, which affected ability to lift, squat, walk, sit, climb stairs, use her hands, bend, stand and kneel, Tr. 692-

13

94, her medical evaluations showed unremarkable diagnostic tests. Tr. 454. Specifically, Plaintiff's doctors' reports showed normal motor strength, no weakness or atrophy, normal range of motion, normal coordination, reflexes within normal limits, intact cranial nerves, normal sensation, and normal gait. Tr. 307, 341, 373, 383, 434, 443, 769.

Moreover, all jobs recommended by the VE (tray worker, bagger) were classified at the *medium* exertional level, requiring lifting no more than 50 pounds at a time with frequent lifting of objects weighing up to 25 pounds. Tr. 459; 20 CFR §§ 404.1567, 416.967. Plaintiff offers no evidence regarding physical limitations except for conclusory appeals to "common sense and elemental medical knowledge" and "administrative fault-finding" that have already been rejected by this Court on initial appeal. Tr. 483-84.

Finally, Plaintiff argues that the ALJ improperly assigned probative value to the opinions of the psychological consultative examiner. Pl. Br. at 26. However, the ALJ provided clear explanations for the weight she assigned to various opinion evidence in the record. She specifically indicated how certain medical opinions were inconsistent with the objective test results or were otherwise inconsistent with the totality of the evidence entered at the hearing. See, e.g., Tr. 455 (attaching little weight to the opinions of Dr. DiGiacomo and Dr. Weisbrot because they were not issued during the period in question); Tr. 456-57 (giving great weight to the opinions of the state agency medical consultants because they showed consistency with the totality of the record and supported their opinions with an explanation, rendering them more persuasive); Tr. 457 (assigning the state agency psychological consultant opinions little weight because the totality of the evidence is consistent with *greater* limitation).

The ALJ found the opinion of Dr. Perdomo to be of little probative value because there was no explanation of specific functional limitations; Dr. Perdomo merely stated that Plaintiff's

14

condition "may affect her ability to function at the job." Tr. 457, 889. Dr. Perdomo's opinion was contradicted by other reports of treating, examining, and consultative physicians that all suggested Plaintiff exhibited relatively normal mental functioning and processing. Tr. 457. Indeed, Plaintiff's medical evaluations showed intact, but "somewhat patchy" memory, fair short-term memory, cooperativeness, pleasantness, clear and coherent speech, alertness with full orientation, normal to mildly impaired concentration, normal/intact judgment, and the ability to repeat 6 digits forward, 3 digits backward and 4 out of 5 works immediately after given to her. Tr. 455. As such, the Court finds no fault in the ALJ's decision to assign little probative value to Dr. Perdomo's opinion.

In light of the ALJ's in-depth analysis of the record, the Court is satisfied the RFC determination is supported by substantial evidence.

**IV.  CONCLUSION**

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.


Date: December 13th, 2022               /s/ Madeline Cox Arleo
                                        **Hon. Madeline Cox Arleo**
                                        **UNITED STATES DISTRICT JUDGE**